UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DE LA LUZ GARCIA,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security of the United States of America,<br><br>    Defendant.<br>_____/ | No. C 08-3833 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendant's and Plaintiff's Cross-Motions for Summary Judgment and Plaintiff's Motion for Remand** |

Having exhausted his administrative remedies, plaintiff Jose de la Luz Garcia ("Garcia") seeks judicial review, pursuant to 42 U.S.C. sections 1383(c)(3) and 405(g), of a final decision of defendant Michael J. Astrue, the Commissioner of Social Security ("the Commissioner"). Garcia alleges that he was improperly denied Social Security and Supplemental Security Income disability benefits. Now before the court are cross-motions for summary judgment and Garcia's motion in the alternative for remand. Having considered the parties' arguments and submissions and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

On August 3, 2006, Garcia filed an application for Social Security disability benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, alleging a disability date of April 3, 2006. *See* Administrative Transcript ("Tr.") at 143-145. In his application, Garcia claimed he was unable to work due to a broken pelvis, back pain and shoulder

pain. Tr. at 143, 159.  Garcia also claims to have suffered a head injury in July 2007 that affects his memory and ability to smell and taste.  Tr. at 73.  Garcia's application for benefits was denied initially and on reconsideration.  Tr. at 85, 92.  Garcia then sought review of his case by an Administrative Law Judge ("ALJ").  Tr. at 97.  A hearing was held on December 14, 2007, at which the ALJ took testimony from Garcia.  Tr. at 36-82.  A vocational expert was also present at the hearing but was not called upon to testify.  Tr. at 40-82.

According to the record, Garcia alleges he became disabled on April 3, 2006, after a motorcycle accident.  Tr. at 159, 162, 196.  Garcia underwent surgery on April 5, 2006 for open reduction and internal fixation of a pubic symphysis diastasis and widening of the SI joint.  Tr. at 217.  On June 19, 2006, Garcia was diagnosed with lumbar degenerative disease and shoulder pain. Tr. at 213.  On August 30, 2006, Chiropractor James Chau ("Chau") diagnosed Garcia with lumbar radiculitis, brachial radiculitis and thoracic pain and noted that Garcia would be totally disabled for an indefinite period of time.  Tr. at 245.  Chau continued to treat Garcia for back and shoulder pain through September 2007.  Tr. at 241.

On October 19, 2006, Garcia was examined by Dr. Calvin Pon.  Tr. at 221-23.  Dr. Pon's evaluation stated that although Garcia suffered chronic wrist, back and shoulder pain as well as foot numbness, Garcia should be able to sit, stand and walk for a total of six hours during an eight-hour workday.  Tr. at 223.  Stooping, crouching, kneeling and squatting, however, should be limited to occasionally.  *Id.*  Additionally, Garcia should be able to frequently lift 10 pounds and occasionally lift 20 pounds.  *Id.*  Dr. Pon also stated that Garcia could bend over and squat and had a full active range of motion in his elbows, wrists and knees.  Tr. at 222-23.

On October 8, 2007, Garcia requested a residual functional capacity ("RFC") examination at the Richmond Health Center.  Tr. at 258.  Garcia reported that he could no longer perform his previous job as a mechanic but felt he "could do anything, he could even be a doctor if he had time." *Id.*  An RFC examination was not completed at that time as medical records first had to be obtained from other sources.  *Id.*  On October 20, 2007, Garcia obtained follow-up treatment at the Richmond Health Center for his previous pelvic injury and an alleged head injury from an assault on July 3,

2

2007. Tr. at 254. On a mini-mental exam conducted that day, Garcia scored 26 points out of 30. Tr. at 255. Garcia was also seen by a neurologist who recorded an impression of post-concussive syndrome and recommended further testing. Tr. at 253, 257.

At the December 14, 2007 hearing before the ALJ, Garcia testified that he had worked as a mechanic until January 2006, when he began buying, fixing and selling real estate. Tr. at 47, 68. He testified that he was physically unable to do either job since being injured in the April 2006 motorcycle accident. Tr. at 45, 56-58, 60-61. At the time of the hearing, his only source of income was from the sale of his personal belongings. Tr. at 43. Garcia testified that he used a portable toilet by his bed at night due to bladder problems, Tr. at 51, did very few household chores, Tr. at 74, and needed assistance putting on his shoes and socks, Tr. at 52. Garcia testified that sitting or standing for long periods of time was difficult, Tr. 57-58, that his shoulder and wrists ached, Tr. at 62, and that he needed to lie down for 1-2 hours 2-3 times a day, Tr. at 69-70, 72. Garcia admitted that he drove his daughter to school. Tr. at 75. At the conclusion of the hearing, the ALJ commented on the lack of current medical records and stated that he would determine whether another hearing was necessary to take testimony from the vocational expert after receipt of additional records, including results of an MRI scheduled for December 31. Tr. 78-80.

On February 1, 2008, Garcia's attorney informed the ALJ that she was unable to develop the medical evidence such that she could properly represent Garcia and withdrew as his attorney of record. Tr. at 193.

On March 11, 2008, the ALJ issued a decision denying Garcia disability and disability insurance benefits. Tr. at 7-16. In reaching this decision, the ALJ applied the five-step evaluation required by 20 C.F.R. section 404.1520(a). This evaluation proceeds, in order, through the following steps, ending immediately if at any step the claimant is determined to be either disabled or not disabled:

> (1) Is the claimant performing substantial gainful work? If so, the claimant is not disabled.
>
> (2) If the claimant is not performing substantial gainful work, does the claimant have a medically determinable impairment or combination of impairments that is severe?

3

> If the impairment or combination of impairments is not severe, the claimant is not disabled.
>
> (3) If the claimant is not performing substantial gainful work and has a severe impairment, has the impairment lasted, or is it expected to last, for a continuous period of at least 12 months and does the impairment meet or medically equal a listed impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is presumed disabled without further inquiry.
>
> (4) Does the claimant have the RFC to perform the requirements of his past relevant work? In assessing RFC, the standard is the claimant's ability to perform sustained work activities, at the highest level possible, in an ordinary work setting and on a regular and continuing basis, defined as eight hours a day, five days a week, or some equivalent schedule. If so, the claimant is not disabled.
>
> (5) Considering the claimant's RFC, age, education and work experience, is the claimant able to do any other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If the claimant is not able to do other work and meets the 12-month duration requirement, the claimant is disabled.

*Id.* The ALJ first found that Garcia had not engaged in substantial work since April 3, 2006. Tr. at 12. Proceeding to step two, the ALJ found that Garcia suffered from severe impairments due to his pelvis, back and shoulder injuries. *Id.* The ALJ next found that Garcia did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. at 13. The ALJ next found that Garcia could not perform his past relevant work, Tr. at 15, but did have the RFC to perform the full range of light work as defined in 20 C.F.R. section 404.1567(b), Tr. at 13. Based on these determinations, the ALJ applied the Medical-Vocational Guidelines ("the Grids") and found that Garcia was not disabled. Tr. at 15-16.

On June 6, 2008, the Social Security Appeals Council denied Garcia's request for review of the ALJ's decision, which thus became the final decision of the Commissioner. Tr. at 4. Garcia then sought judicial review of his case in this court.

LEGAL STANDARD

This court may disturb the Commissioner's final decision "only if it is not supported by substantial evidence or if it is based on legal error." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d

4

678, 679 (9th Cir. 1993). It is more than a scintilla, but less than a preponderance. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court's review "must consider the record as a whole," weighing both that evidence which supports as well as that which detracts from the Commissioner's decision. *Desrosiers v. Sec'y of Health & Human Serv.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be affirmed. *Andrews*, 53 F.3d at 1039-40. However, the Commissioner's decision should be set aside if improper legal standards were applied in reaching that decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

DISCUSSION

Garcia argues that the ALJ erred by (1) failing to develop the record, to the detriment of Garcia's case; (2) rejecting Garcia's testimony regarding his functional limitations without providing clear and convincing reasons for doing so; and (3) improperly applying the Grids to determine whether Garcia was disabled without the expertise of a vocational expert despite the presence of non-exertional limitations. The court discusses each contention in turn.

I.   Development of the Record

The ALJ found that Garcia was not performing substantial work, that he was not doing so because of severe impairments and that because of these impairments he could not perform any past relevant work. The ALJ nevertheless found that Garcia was capable of performing a full range of light work and thus not disabled. Garcia argues that the ALJ's determination was flawed because the ALJ failed to develop the record sufficiently. Specifically, Garcia argues that the ALJ should have (1) ordered a neurological or psychological examination on account of Garcia's alleged head injury and diagnosis of post-concussive syndrome with depression as a component, (2) re-contacted Garcia's chiropractor to clarify whether Chau continued to consider Garcia disabled after November 2006, and (3) ordered an updated RFC examination due to the degenerative nature of Garcia's impairments.

5

A.       Failure to Order Neurological or Psychological Examination

Garcia contends that the ALJ committed legal error by failing to order further examination to investigate Garcia's claims of symptoms resulting from a July 2007 assault. Although an ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983), it is a claimant's burden to provide evidence of the claimed disability, 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). In addition, in order to establish the existence of a medically determinable impairment, a claimant must provide medical evidence of signs as well as symptoms. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). Signs are the result of medically acceptable clinical diagnostic techniques, such as tests, and symptoms are " 'an individual's own perception or description of the impact of his or her physical or mental impairments.' " *Id.* (quoting Social Security Ruling ("SSR") 96-4p, 1996 WL 374187).

Garcia provided no treatment records for his alleged head injury. Tr. at 15. The only medical evidence that Garcia presented regarding this injury was (1) a consultation report noting an impression of post concussive syndrome and recommending additional testing and (2) a mini-mental exam on which Garcia scored 26 points out of 30, within the normal range. At his hearing, Garcia testified he was scheduled to have an MRI to identify any signs of damage as a result of the purported assault. After the MRI was to have occurred, however, Garcia's attorney informed the ALJ that she was unable to develop the medical evidence for Garcia's claims and withdrew as Garcia's attorney. Because Garcia provided no treatment records for his alleged head injury and scored within the normal range on the only diagnostic test results presented concerning Garcia's claimed symptoms, the ALJ did not err in his decision regarding this claimed impairment. Garcia's head injury, without any diagnosis other than a physician's untested impression of post-concussive syndrome, is based solely on Garcia's own report.

Though it was Garcia's duty to prove that he was disabled, he argues that the ALJ should have nonetheless ordered a neurological or psychological examination. Garcia cites *Reed v.*

1 *Massanari* for this proposition, which holds that some cases require consultative examinations,
2 including those cases in which needed evidence is not contained in the claimant's medical records or
3 evidence is so ambiguous or insufficient that the ambiguity or insufficiency must be resolved. 270
4 F.3d 838, 842 (9th Cir. 2001) (citations omitted). Notably, however, *Reed* also states that "[t]his
5 does not mean that a claimant has an affirmative right to have a consultative examination performed
6 by a chosen specialist." *Id.* Also, *Reed* can be distinguished from Garcia's case based on the
7 existence of a function-by-function RFC examination in Garcia's records. In *Reed*, the claimant's
8 record lacked such an assessment. *Id.* at 843 n.2. Garcia's record, in contrast, contains a function-
9 by-function RFC examination on which the ALJ properly relied in making his determination.

10 Finally, the ALJ satisfied his duty to develop the record by keeping the record open for
11 submission of post-hearing evidence, including the results of Garcia's scheduled MRI. *See Tidwell*
12 *v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (finding that keeping the record open for submission of
13 additional medical evidence satisfied ALJ's duty to develop the record). Garcia failed to avail
14 himself of this opportunity to provide additional evidence.

15 As Garcia did not present any evidence of signs of an impairment due to his alleged head
16 injury other than a treating physician's pre-testing impression of post-concussive syndrome, Garcia
17 did not satisfy his burden of establishing a disability. The ALJ was not obligated to order additional
18 consultative examinations and satisfied his duty to develop the record by leaving the record open for
19 submission of post-hearing evidence. Accordingly, the ALJ did not commit legal error by failing to
20 order a neurological or psychological consultative examination.

21       B.     Failure to Contact Treating Chiropractor

22 The ALJ noted that Chau considered Garcia disabled in November 2006, but that the record
23 did not indicate whether Chau "continued to have this opinion thereafter." Tr. at 14. Garcia argues
24 that the ALJ should have contacted Chau to clarify this point, as the Commissioner's regulations
25 suggest that an ALJ re-contact a treating source when the evidence is inadequate to determine
26 whether a disability exists. *See* 20 C.F.R. § 1512(e)(1). However, in the context of a Social Security
27 disability determination, a chiropractor is not an acceptable medical source and therefore cannot

28

7

1 establish the existence of an impairment, give a medical opinion or be considered a treating source.
2 *See Bunnell v. Sullivan*, 912 F.2d 1149, 1151-1152 (9th Cir. 1990), *modified on other grounds*,
3 *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc); SSR 06-03p, 2006 WL 2329939.
4 "Although a claimant is free to offer chiropractic evidence to help the Secretary understand his
5 inability to work," there is no requirement to accept or specifically refute such evidence. *Bunnell*,
6 912 F.2d at 1152. Garcia nonetheless argues that the ALJ's acknowledgment of Chau's opinion that
7 Garcia was unable to work in November 2006 gave rise to an obligation to re-contact Chau to clarify
8 whether this opinion persisted thereafter. Because Chau was not an acceptable medical source and
9 the ALJ was not required to specifically refute the evidence relating to Chau's treatment of Garcia,
10 the ALJ was under no obligation to re-contact the chiropractor to clarify his opinion. Accordingly,
11 the ALJ did not commit legal error by failing to do so.

12       C.       <u>Failure to Order an Updated RFC Examination</u>

13 Garcia argues that because the ALJ was unwilling to rely on Chau's November 2006 opinion,
14 it was improper for the ALJ to rely on Dr. Pon's October 2006 RFC examination. Instead, Garcia
15 argues, the ALJ should have ordered an updated RFC examination. The ALJ, however, was under
16 no obligation to rely on Chau's opinion, regardless of the date, because a chiropractor is not an
17 acceptable medical source. In addition, the ALJ relied on all relevant evidence in the record, not just
18 the RFC examination, to determine that Garcia was not disabled. The ALJ was not required to order
19 an updated RFC examination and sufficiently met his duty to develop the record by leaving the
20 record open for submission of additional evidence.

21 Garcia also argues that the ALJ improperly rejected the postural limitations set forth by Dr.
22 Pon. During that examination, Dr. Pon determined that Garcia should be limited to occasional
23 stooping, crouching, kneeling, squatting, crawling and ladder and stair climbing. These limitations
24 are within the guidelines that define light work, in which an individual "would not need to crouch
25 and would need to stoop only occasionally." SSR 83-14, 1983 WL 31259. Restrictions from
26 climbing, balancing, crawling and kneeling do not significantly impact an individual's ability to
27 perform light work. *See* SSR 85-15, 1985 WL 56857. Because the postural limitations identified by
28

8

1  Dr. Pon are subsumed in the definition of light work, the ALJ's rejection of the limitations is
2  irrelevant and harmless.

3  Finally, Garcia also argues that the ALJ should have considered Garcia's inability to pay for
4  treatment. It is impermissible to deny benefits based upon a claimant's failure to seek treatment due
5  to an inability to pay. *See* SSR 82-59, 1982 WL 31384 (inability to afford prescribed treatment may
6  be a justifiable cause for failure to follow prescribed treatment). The ALJ, however, did not
7  determine that Garcia was not disabled based on his lack of treatment. Rather the ALJ properly
8  relied on the RFC examination, other medical records provided by Garcia and Garcia's own
9  testimony. Accordingly, the ALJ was under no obligation to consider Garcia's inability to pay for
10 treatment.

11 II.    Garcia's Testimony Regarding his Pain and Functional Limitations

12 Garcia argues that the ALJ committed legal error by rejecting Garcia's testimony regarding
13 his functional limitations as not credible without providing clear and convincing reasons for so
14 doing. If a claimant produces evidence that he suffers from an impairment that could reasonably be
15 expected to cause pain or other symptoms and "there is no affirmative evidence suggesting she is
16 malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms
17 only of he makes specific findings stating clear and convincing evidence for doing so." *Smolen v.*
18 *Chater*, 80 F.3d 1273, 1283-1284 (9th Cir. 1996). However, an ALJ's finding that a claimant lacks
19 credibility is generally entitled to deference. *Frustaglia v. Sec'y of Health & Human Servs.*, 829
20 F.2d 192, 195 (1st Cir. 1987).

21 The ALJ made no finding of malingering and acknowledged that Garcia's impairments could
22 reasonably be expected to cause pain. Nonetheless, the ALJ rejected Garcia's testimony regarding
23 his pain and functional limitations. The parties dispute whether the ALJ made specific findings and
24 stated clear and convincing reasons for doing so. The record, however, illustrates that the ALJ
25 provided several specific reasons for rejecting Garcia's testimony, including Garcia's statement to
26 Dr. Puell that he could do work other than as a mechanic and Dr. Pon's observations that Garcia was
27 able to ambulate, bend over, and get on and off of the examination table normally and without aid.
28

9

Tr. at 14-15. The court concludes that the ALJ's credibility determination is supported by substantial evidence in the record and that the ALJ provided specific, clear and convincing reasons for the credibility determination.

III.     Reliance on Medical-Vocational Guidelines

Garcia argues that the ALJ erred by utilizing the Grids to determine that Garcia could perform substantial gainful work despite the presence of non-exertional limitations and without the testimony of a vocational expert. Where a claimant's impairments prevent him from returning to his former work, an ALJ may determine whether the claimant can perform other types of work by either applying the Grids or taking the testimony of a vocational expert. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The Grids, found at 20 C.F.R. Part 404, Subpart P, App. 2, "are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." *Id.* Use of the Grids is "inappropriate where the predicate for using the [G]rids—the ability to perform a full range of either medium, light or sedentary activities—is not present." *Id.* The fact that a non-exertional limitation is alleged does not automatically preclude application of the Grids. *Desrosiers*, 846 F.2d at 577. Rather, the ALJ should first determine if the claimant's non-exertional limitations, including postural limitations, significantly reduce the range of work, such as light, medium or heavy, permitted by his exertional limitations. *Id.*

After determining that Garcia was able to perform a full range of light work, the ALJ referred to the Grids and found that Rule 202.14 directed a finding of "not-disabled" based on Garcia's RFC, age, education and work experience. Tr. at 16. The application of the Grids was not precluded because Garcia could perform substantially all of the requirements of light work despite the postural limitations opined by Dr. Pon. The definition of light work states:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

10

20 C.F.R. § 404.1567(b); SSR 83-14; SSR 85-15.  The limitations assessed by Dr. Pon limited Garcia to lifting 20 pounds occasionally and occasionally stooping, crouching, kneeling, squatting, crawling and ladder climbing.  Tr. at 223.  Dr. Pon stated that Garcia could stand, walk, or sit for 6 hours during an 8-hour workday, perform pushing and pulling right arm-hand control on a frequent basis, lift 10 pounds frequently and climb stairs frequently, with no limitations on his ability to perform pushing and pulling left arm-hand control, perform bilateral pushing leg-foot control, reach bilaterally or perform gross and fine manipulative tasks.  Tr. at 223.  Both the exertional and non-exertional limitations expressed by Dr. Pon and the medical record are subsumed in the definition of light work.  Accordingly, Garcia's non-exertional limitations do not significantly limit his ability to perform light work and the ALJ properly utilized the Grids to determine whether Garcia was disabled.

## CONCLUSION

For the foregoing reasons, plaintiff Garcia's motion for summary judgment and, in the alternative, for remand is DENIED.  The Commissioner's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: March 30, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11